UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

RUSSELL SHOWERS,                                     :

    **Plaintiff**                                     :         CIVIL ACTION NO. 3:20-1868

    **v.**                                              :         (JUDGE MANNION)

DR. COURTNEY RODGERS, et al.,:

    **Defendants**                                    :

## MEMORANDUM

## I. Background

Plaintiff, Russell Showers, an inmate confined in the Mahanoy State Correctional Institution, Frackville ("SCI-Mahanoy"), Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). On April 5, 2021, Plaintiff filed an amended complaint, (Doc. 33) and on May 3, 2021, Plaintiff filed a supplemental complaint. (Doc. 39). The named Defendants are Correct Care Solutions and the following SCI-Mahanoy employees: Dr. Courtney Rodgers, Medical Director/Supervising Physician; John Steinhart, Health Care Administrator; John O'Brien, Physician Assistant; and Registered Nurses Kim Minarchick, Brenda Houser, and Patricia Howell. Id. Plaintiff seeks compensatory and punitive

damages for Defendants' alleged deliberate indifference to Plaintiff's serious back pain. Id.

Presently before the Court are Defendants' motions to dismiss Plaintiff's complaint. (Docs. 36, 44). Defendants argue, *inter alia,* that Plaintiff failed to exhaust administrative remedies prior to filing the instant action. Id. For the reasons set forth below, the Court will grant Defendants' motions to dismiss Plaintiff's complaint for Plaintiff's failure to exhaust his administrative remedies.

## II. Standard of Review

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not

required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

     In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by

3

reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.' " Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §1357 (3d Ed. 2004)); see also Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

4

III.   **Statement of Facts**

The Pennsylvania Department of Corrections' administrative remedies for inmate grievances are provided for in Department of Corrections Administrative Directive 804. See www.cor.state.pa.us, DOC Policies, DC-ADM 804, Inmate Grievance System Policy ("DC-ADM 804"). This policy establishes the Consolidated Inmate Grievance Review System, through which inmates can seek to resolve issues relating to their incarceration. Id. The first step in the inmate grievance process is initial review. Id. Grievances must be submitted for initial review within 15 working days after the event upon which the grievance is based. Id. After initial review, the inmate may appeal to the superintendent of their institution. Id. Upon completion of the initial review and the appeal from the initial review, an inmate may seek final review with the Chief of the Secretary's Office of Inmate Grievances and Appeals (SOIGA). Id.

On May 8, 2020, Plaintiff filed Grievance No. 867174 regarding the medical treatment received for the herniated disks in his lower back and neck area. (Doc. 44-1 at 5, Official Inmate Grievance).

By Response dated May 28, 2020, Nurse Minarchick denied Plaintiff's grievance as follows:

5

In review of your medical record, I see that you have been assessed by multiple providers here at SCI-Mahanoy and have been to pain management offsite. On 12/23/19, they saw you. An outside specialist can make recommendations but are not able to prescribe medications in the institution. The medical director reviews any recommendations and then orders what they deem appropriate here in the institution.

On 3/2/2020, Dr. Rodgers assessed you upon return after a visit to neurosurgery. He informed you that if the specialist recommended repeat studies, he would have to present it to the Wellpath committee for approval. He notes you understood his explanation. The notes were uploaded the next day. The recommendation was to obtain an x-ray and MRI for you. Our medical director ordered the x-ray. He placed a consult for the MRI. You do have an upcoming appointment for the MRI but you must understand that offsite diagnostics such as this may be delayed due to the COVID pandemic. This is beyond our control of the institution. The x-ray of your spine revealed that you had no fractures, some demineralized bony structures, appropriate vertebral body heights, mild disc space narrowing. Spondylolysis not confirmed. It is noted that further evaluation by an MRI may be used for further evaluation since x-rays are limited evaluation tools.

On 5/6/20, sick call was expedited due to COVID 19. The practitioner reviewed your medication renewal requests did order them for you with the applicable co-pay fee. Medications used to treat pain are subject to the standard copay fees. Pain is not treated in chronic clinic such as hypertension or diabetes. These chronic illnesses require life-sustaining medications. Medications for pain are not in this category. It is your responsibility to be aware of your expiration dates and sign for sick call to allow a practitioner to evaluate you for continued use. Pain medications are not automatically renewed.

6

> You have been provided with medications, diagnostic tests, evaluations, and have seen outside specialists to manage your complaints of pain. This is appropriate care. Again, the recommendations of any outside doctor are reviewed by the physician here and deemed appropriate or not for use here and for your treatment. You need to be aware of your prescription start and stop dates so you can pursue evaluation for renewal in sick call. We are waiting for your appointment of the MRI, but this is based on the schedule of the outside facility's available appointment. This again is out of the control of the institution.
>
> The medical department cannot force a practitioner to order medications for you. Their orders are based on their judgment and can only be rendered by the licensed professional. The medical department does not address monetary demands.
>
> The allegations in this grievance are found to be without merit. The grievance is denied.

(Doc. 44-1 at 7, Initial Review Response).

On June 30, 2020, Plaintiff appealed the initial review response to the Facility Manager, (Doc. 44-1 at 9), who, on July 21, 2020, upheld the decision of the grievance officer, finding "RNS Minarchik properly investigated [Plaintiff's] claims and provided [him] with a clear, thorough and proper response" and that "the medical care [he is] receiving is appropriate." Id.

On July 28, 2020, Plaintiff filed his final appeal to the Secretary's Office of Inmate Grievances & Appeals (SOIGA). (Doc. 44-1 at 12,

7

Appeal). By Notice to Inmate dated August 17, 2020, the SOIGA notified

Plaintiff that the final review decision would be delayed pending their

referral to the Bureau of Health Care Services as follows:

> In this grievance, Inmate Showers is stating that he suffers
> from herniated disks in his lower back and neck area which he
> claims are causing him severe pain, loss of bodily functions,
> numbness in this right arm and possible permanent nerve
> damage. He claims that Dr. Rodgers and the SCI-MAH
> medical staff are aware of his condition yet continue to
> deny/delay proper and effective treatment. He also claims that
> on 5/5/20 he was informed during pm pill line that his
> prescription for a nerve blocking medication (Gabapentin) had
> expired. He claims that Dr. Rodgers purposely let this expire,
> as there's no way he didn't realize his prescription was about
> to expire because he had been sending him numerous request
> slips asking that his dosage of medication be increased, which
> he claims was a recommendation by the Geisinger Hospital's
> Neurosurgeon. The inmate is requesting that his dosage be
> increased, and Dr. Rodger's be reprimanded. Please review
> and advise.

(Doc. 44-1 at 4).

By Final Appeal decision dated November 18, 2020, the SOIGA

denied Plaintiff's appeal as follows:

> The staff at the Bureau of Health Care Services reviewed your
> concern of not being provided proper medical care. They have
> thoroughly reviewed your medical record and has determined
> that the medical care provided was reasonable and
> appropriate. Their findings concur with the initial review
> response.

> Your attending practitioner makes these clinical decisions. You are encouraged to participate in your treatment plan and to discuss your concerns or changes of condition with your practitioner. They found no evidence of wrongdoing. Therefore, this office upholds the responses provided to you and your requested relief is denied.

(Doc. 44-1 at 1, Final Appeal Decision).


## IV. Discussion

The Prison Litigation Reform Act ("PLRA") requires that a prisoner pursue all available administrative remedies within the prison's grievance system before bringing a civil rights action concerning prison conditions in federal court. See 42 U.S.C. §1997e(a); Ross v. Blake, 578 U.S. 632, 136 S.Ct. 1850, 1855 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The PLRA also requires "proper exhaustion," demanding that the inmate follow all steps and procedural prerequisites of the applicable institutional administrative review process. Jones v. Bock, 549 U.S. 199, 218 (2007) (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)). "Proper exhaustion demands compliance with an agency's deadlines and other

critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90–91. The failure to follow the procedural requirements of the prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227–32 (3d Cir. 2004).

An inmate's failure to exhaust his administrative remedies is an affirmative defense the defendants must plead and prove. See Jones, 549 U.S. at 216; Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018). Once defendants establish that administrative remedies were not exhausted prior to the inmate filing the action, the inmate must establish that administrative remedy procedures were either unavailable to him under Ross, or present evidence demonstrating that he did exhaust his administrative remedies. Rinaldi, 904 F.3d at 268.

"Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to §1997e's exhaustion requirement." Washington-El v. Collins, 2016 WL 5338709, at *5 (M.D. Pa. June 21, 2016), report and recommendation adopted, 2016 WL 5339733 (M.D. Pa. Sept. 22, 2016). "Instead, courts have typically

required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court." Id.

Additionally, the PLRA strictly requires exhaustion prior to the filing of his complaint. See Ahmed v. Dragovich, 297 F.3d 201, 209, n. 9 (3d. Cir. 2002); see also Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d. Cir. 2006) (non-precedential) ("[T]here appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").

Defendants have properly raised the matter of exhaustion of administrative remedies with respect to Plaintiff's claims. Plaintiff's grievance history reveals that while Plaintiff began the administrative process on May 8, 2020, prior to filing the instant action, he failed to wait for the Final Appeal Decision on November 18, 2020 and, instead, filed the instant action on October 9, 2020, prior to fully exhausting his administrative remedies regarding his claims. Plaintiff does not dispute this. In fact, Plaintiff states in his Supplemental Complaint that "[s]ince October, when this action was brought by Plaintiff, new claims arised (sic) and Plaintiff had to exhaust his administrative remedies pursuant to the

11

PLRA before raising the allegations within this complaint." (Doc. 39 at 1). Consequently, Defendants' move to dismiss Plaintiff's complaint for Plaintiff's admitted failure to exhaust his administrative remedies as required under the PLRA. Additionally, in his brief in opposition, Plaintiff attempts to demonstrate that he exhausted administrative remedies, specifically, with respect to Defendant O'Brien. (Doc. 52). Again, unfortunately, Plaintiff's attempt to exhaust did not occur prior to filing the instant action, in that his initial grievance directed to Defendant was filed on December 29, 2020, more than two months after the October 9, 2020 filing of the instant action. Id. Thus, given his submissions and admission, it is clear that the grievance process was not complete when Plaintiff filed this action and, therefore, dismissal for failure to exhaust is warranted. The complaint will be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B).

In Spruill, our Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." The court further ruled that procedural default under §1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends

the Federal Constitution or the federal policy embodied in §1997e(a)." Id. at 231, 232.

In this case, Plaintiff's grievance history reveals that he failed to exhaust any administrative remedy prior to filing the instant action. Thus, Plaintiff has sustained a procedural default.

Spruill cited with approval the Seventh Circuit decision in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Spruill, 372 F.3d at 231. In Pozo, the Seventh Circuit ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025 (emphasis added). Thus, Plaintiff is now foreclosed from litigating his claims in this Court.

In Spruill, the Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." 372 F.3d at 230. In Pusey v. Belanger, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14,

13

2004), the court applied Spruill to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance. In Berry v. Kerik, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances. In Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in Pozo, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted." These precedents support this Court's decision to dismiss the complaint for failure to exhaust administrative remedies.

14

**V. Conclusion**

For the reasons set forth above, the Court will grant Defendants'

motions to dismiss for Plaintiff's failure to exhaust administrative remedies.

A separate Order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 17, 2022**
20-1868-01

15