**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

RUSSELL SHOWERS,                          :

          Plaintiff                 :        CIVIL ACTION NO. 3:20-1868

    v.                                      :            (JUDGE MANNION)

DR. COURTNEY RODGERS,                     :
*et al.*,

                              :

        Defendants

## MEMORANDUM

Currently before the Court is Defendant Correct Care Solutions ("CCS")'s motion to dismiss *pro se* Plaintiff Russell Showers ("Showers")'s supplemented amended complaint or, in the alternative, motion for judgment on the pleadings based on a bankruptcy discharge issued in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). For the reasons stated below, the Court will grant CCS's motion to dismiss because Showers asserts a pre-bankruptcy petition claim against it and the bankruptcy discharge enjoins such a claim, dismiss Showers's claims against CCS in its operative complaint, provide Showers with the opportunity to move to substitute the trust created to assume all pre-petition claims like those he asserts against CCS in this case, deny as moot CCS's alternative motion for judgment on the pleadings, and establish deadlines for

Showers to file a motion to substitute, the parties to conduct discovery, and the parties to file dispositive motions.

## I.    BACKGROUND

Showers, a convicted and sentenced state prisoner currently incarcerated at Pennsylvania State Correctional Institution Mahanoy, commenced this action by filing a complaint, which the Clerk of Court docketed on October 9, 2020. (Doc. 1.) Showers named as Defendants the following individuals who allegedly worked at SCI Mahanoy during the events described in his complaint: (1) Dr. Courtney Rodgers, a CCS employee who worked as the Medical Director and Supervising Physician; (2) John Steinhart ("Steinhart"), a Correctional Health Care Administrator employed by the Commonwealth of Pennsylvania Department of Corrections ("DOC"); (3) Kim Minarchick ("Minarchick") and Patricia Howell ("Howell"), Registered Nurse Supervisors at SCI Mahanoy; (4) Brenda Houser ("Houser"), a Registered Nurse; and (5) CCS, the DOC's "Medical Care Vender [sic]." (*Id.* at 1–3). Showers generally alleged that Defendants were deliberately indifferent to his serious medical needs relating to his neck and back pain in violation of the Eighth Amendment to the United States Constitution. *See* (*id.* at 10–12). As such, he asserted claims under 42 U.S.C. §1983 against

Defendants for monetary, declaratory, and injunctive relief. *See* (*id.* at 12–13).

When he filed his complaint, Showers neither remitted the fee nor sought leave to proceed *in forma pauperis.* As such, an Administrative Order issued requiring him to either pay the fee or apply for leave to proceed *in forma pauperis.* (Doc. 4.) Showers timely complied with the Administrative Order by filing an application for leave to proceed *in forma pauperis* ("IFP Application") along with a certified prisoner trust fund account statement on October 20, 2020. (Docs. 5, 6.) Three days later, the Court issued an Order granting the IFP Application and directing the Clerk of Court to send waiver of service forms to Defendants. (Doc. 7.)

Steinhart, Minarchick, Howell, and Houser (collectively, the "DOC Defendants") jointly filed a motion to dismiss Showers's complaint under Federal Rule of Civil Procedure 12(b)(6), along with a supporting brief, on December 21, 2020. (Docs. 14, 15.) On January 4, 2021, CCS and Dr. Rodgers (collectively, the "CCS Defendants") filed a Rule 12(b)(6) motion to dismiss Showers's complaint and a motion for partial summary judgment, along with a supporting brief. (Docs. 19, 20.)

After receiving extensions of time to file responses to Defendants' motions (Docs. 22–29), Showers filed a brief in opposition to the DOC

Defendants' motion along with a motion for leave to file an amended complaint and proposed amended complaint on April 5, 2021. (Docs. 30, 31.) A week later, on April 12, 2021, the Court issued an Order which, *inter alia*, granted Showers's motion for leave to file an amended complaint, directed the Clerk of Court to docket his proposed amended complaint attached to his motion as his amended complaint, and denied Defendants' motions as moot. (Doc. 32.) On the same date, the Clerk of Court docketed Showers's amended complaint in which he once again asserted Section 1983 Eighth Amendment claims against Defendants. (Doc. 33.)

The CCS Defendants filed a Rule 12(b)(6) motion to dismiss Showers's amended complaint, along with a supporting brief, on April 13, 2021. (Docs. 36, 37.) On May 1, 2021, Showers filed a motion for leave to file a supplemental complaint along with his proposed supplemental complaint in which he asserted Eighth Amendment claims against Steinhart and SCI Mahanoy Physician's Assistant John O'Brien ("O'Brien"). (Docs. 38, 39.) On May 17, 2021, the Court issued an Order which, *inter alia*: (1) granted Showers's motion for leave to file a supplemental complaint and accepted his proposed supplemental complaint as filed; (2) directed the Clerk of Court to amend the docket to show O'Brien as a named Defendant; (3) directed the Clerk of Court to serve Showers's amended complaint and supplemental

- 4 -

complaint on O'Brien; and (4) established deadlines for various filings. *See* (Doc. 42 at 2).

O'Brien filed a motion to dismiss Showers's supplemented amended complaint, along with a supporting brief, on May 28, 2021. (Docs. 44, 45.) On the same date, the CCS Defendants filed a reply brief in further support of their motion to dismiss. (Doc. 47.) Three days later, the DOC Defendants filed a brief in support of their motion to dismiss Showers's supplemental complaint. (Doc. 48.)

On June 1, 2021, Showers filed an omnibus submission in which he sought a default judgment against the DOC Defendants for their alleged failure to file a responsive pleading, an order directing the DOC Defendants to serve them with a copy of their responsive pleading to the extent that they filed one and he did not receive it, and an extension of time for him to file an opposition brief. *See* (Doc. 49 at 1–3). Two weeks later, the DOC Defendants filed a brief in opposition to Showers's request for a default judgment. (Doc. 50.)

Showers filed a brief in opposition to the CCS Defendants' motion to dismiss on July 21, 2021. (Doc. 52.) A week later, the Court issued an Order denying Showers's motion for entry of a default judgment. (Doc. 53.) On

August 4, 2021, the DOC Defendants filed a reply brief in further support of their motion to dismiss. (Doc. 55.)

On March 17, 2022, the Court issued a Memorandum and Order which, *inter alia*, granted Defendants' motions to dismiss based on Showers's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act and dismissed Showers's supplemented amended complaint. (Docs. 58, 59.) Showers then moved for reconsideration of the Court's Memorandum and Order (Docs. 62, 63), which the Court denied via a Memorandum and Order issued on January 6, 2023. (Docs. 73, 74.)

On February 6, 2023, Showers appealed from the Court's March 17, 2022 dismissal of this action and January 6, 2023 denial of his motion for reconsideration to the Third Circuit Court of Appeals. (Doc. 75.) On April 30, 2024, the Third Circuit vacated the dismissal of this action and remanded it for further proceedings. *See* (Doc. 78); *Showers v. Rodgers*, No. 23-1241, 2024 WL 1877028 (3d Cir. Apr. 30, 2024) (unpublished). Two days later, the Court issued an Order which, *inter alia*, directed Showers to file an all-inclusive second amended complaint containing those claims deemed exhausted by the Third Circuit by May 30, 2024. (Doc. 79.)

Showers did not comply with this Order. Nevertheless, the Court provided him with another opportunity to file a second amended complaint

- 6 -

by entering an Order on September 6, 2024, giving him leave until October 4, 2024, to file a second amended complaint. (Doc. 82.) Instead of filing a second amended complaint, Showers moved for a 45-day extension of time to file a second amended complaint on October 4, 2024. (Doc. 83.)

On November 15, 2024, Wellpath Holdings, Inc. ("Wellpath") filed a suggestion of bankruptcy and notice of automatic stay. (Doc. 85.) In this filing, Wellpath explained that it filed the notice in this case because it was formerly known as Defendant CCS, and it indicated that it filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court on November 11, 2024. *See* (*id.* ¶¶1–2).

On February 18, 2025, this Court issued an Order which, *inter alia*, stayed and administratively closed this case due to Wellpath's Chapter 11 bankruptcy filing. (Doc. 86.) On May 30, 2025, the CCS Defendants and O'Brien jointly filed a status report in which they stated that the Bankruptcy Court approved Wellpath's Chapter 11 plan of reorganization, pointed out that the automatic stay is no longer in place, and requested that the Court lift the stay. (Doc. 87.) On September 29, 2025, CCS filed the instant motion to dismiss or, in the alternative, motion for judgment on the pleadings, along with a supporting brief. (Docs. 88, 89.)

Based on the aforementioned status report, the Court issued an Order on October 21, 2025, which, *inter alia*: (1) lifted the stay; (2) provided Showers with a 30-day period to file an all-inclusive second amended complaint; and (3) informed Showers that if he did not timely file a second amended complaint, the Court would construe his inaction as demonstrating his intent to proceed on his supplemented first amended complaint and would establish a deadline for Defendants to file responses to Showers's first amended complaint. *See* (Doc. 90 at 2–3). In response to the Court's Order, Showers filed a motion seeking a 60-day extension of time to file his second amended complaint on November 10, 2025. (Doc. 91.) Showers asserted that he required this lengthy extension because of limited access to the prison law library. *See* (*id.* at 1). On November 13, 2025, the Court granted Showers's motion for an extension of time and provided him with an extension until January 12, 2026, to file his second amended complaint. (Doc. 92.)

Rather than file a second amended complaint, Showers filed another motion for a 60-day extension of time to file his second amended complaint, which the Clerk of Court docketed on January 2, 2026. (Doc. 93.) Showers again raised alleged limitations on his ability to access the prison law library as showing good cause for his requested extension. *See* (*id.* at 1). On March

30, 2026, the Court issued an Order: (1) denying Showers's second motion for an extension of time; (2) indicating that this case would proceed on Showers's claims in his amended complaint, as supplemented; (3) directing all Defendants other than CCS to file responses to Showers's operative complaint within 21 days; (4) staying CCS's deadline to file a response until the Court resolved its pending motions; (5) directing Showers to file a response to CCS's motion to dismiss or, in the alternative, motion for judgment on the pleadings, within 21 days; and (6) admonished Showers that the Court would deem him to be unopposed to CCS's motion if he did not file a timely response. *See* (Doc. 94 at 5).

To date, Showers has neither filed a response to CCS's motion nor sought an extension of time to do so. As such, the Court deems him to be unopposed to the motion. In addition, all Defendants other than CCS filed answers with affirmative defenses to Showers's amended complaint, as supplemented, on April 20, 2026. (Docs. 95, 96.)

## II. LEGAL STANDARDS

### A. Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction and may dismiss complaints for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Winslow v. Stevens*, No. 14-cv-4550, 2015 WL

289998, at \*1 (E.D. Pa. Jan. 21, 2015) (citation omitted), *aff'd*, 632 F. App'x 721 (3d Cir. 2015) (unpublished). Challenges to subject-matter jurisdiction may be either facial or factual. *See id.* A facial challenge to subject-matter jurisdiction "contests the sufficiency of the pleadings." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). In other words, such a challenge "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court," such as when the claim does not involve a question of federal law or does not involve diverse parties. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). In reviewing a facial challenge to subject-matter jurisdiction, the Court is limited to considering the complaint, as well as documents referenced in the complaint or attached thereto, in the light most favorable to the plaintiff. *See id.* This is the same standard district courts apply in reviewing motions to dismiss under Rule 12(b)(6). *See id.* By contrast, a factual challenge to subject-matter jurisdiction "concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (quoting *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (alterations in original)). Where the defendant makes a factual challenge to subject-matter jurisdiction, the court may

"consider evidence outside the pleadings." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir. 1997)), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003).

B.   **Motions for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c)**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings is a procedural hybrid of a motion to dismiss and a motion for summary judgment." *Gaughen v. United States*, No. 09-cv-2488, 2011 WL 292019, at *1 (M.D. Pa. Jan. 27, 2011). In considering such a motion, the court ordinarily considers "the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents, and matters of public record." *Tristate Antiques v. Fed. Ins. Co.*, No. 17-cv-1823, 2017 WL 4539287, at *1 (E.D. Pa. Oct. 11, 2017). Judgment on the pleadings is only warranted where "the plaintiffs would not be entitled to relief under any set of facts that could be proved." *Green v. Fund Asset Mgmt.*, L.P., 245 F.3d 214, 220 (3d Cir. 2001).

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that

- 11 -

apply to a Rule 12(b)(6) motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004) (explaining that there is "no material difference in the applicable legal standards" for 12(b)(6) motions and 12(c) motions for judgment on the pleadings). As with a Rule 12(b)(6) motion, the court must therefore "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party," and cannot grant the motion "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quoting *In re Asbestos Prods. Liability Litig. (No. VI)*, 822 F.3d 125, 133 n.6 (3d Cir. 2016)).

## III.  DISCUSSION

CCS argues in its motion that the Court should dismiss Showers's claims against it because of what transpired during Wellpath's bankruptcy proceedings. CCS indicates that on May 1, 2025, the Bankruptcy Court issued "Findings of Fact, Conclusions of Law, and Order (I) Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath . . . and Certain of Its Debtor Affiliates and (II) Approving the Disclosure Statement

on a Final Basis." (Docs. 88 ¶ 2; 88-1.) Under the terms of the Amended Plan, which became effective on May 9, 2025, all "Claims and Causes of Action" (as those terms are defined therein) against Wellpath and its affiliated debtors were discharged, and all holders of claims are permanently enjoined from commencing or continuing any proceeding in connection with such claims, or enforcing recovery from, among others, Wellpath, the other debtors, and the debtors' estates. (Doc. 88 ¶¶7–8 (citations omitted)); *see also* 11 U.S.C. §524(a)(2) ("A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . .").

On June 4, 2025, the Bankruptcy Court issued a General Form of Order Regarding Lift Stay Motions ("Stay Order"). (Docs. 88 ¶9; 88-2.) The Stay Order clarified the impact of the Amended Plan on actions against Wellpath, its related entities, and other debtors. *See* (Docs. 88 ¶9; 88-2 at 1–4). Pursuant to Article IX.A. of the Amended Plan and paragraph 3 of the Stay Order, all "Claims and Causes of Action" against Wellpath, among others, were discharged. (Docs. 88 ¶10; 88-1 at 71–72; 88-2 ¶3.) In addition, under Article IX.F of the Plan, holders of "Claims and Causes of Action" that were discharged or released were permanently enjoined from, among other

- 13 -

things, continuing any action with respect to these claims or recovering any judgment with respect to such claims. (Docs. 88 ¶11; 88-1 at 77.) Moreover, this Article provides that holders of claims subject to the Third-Party Release ("TPR") who did not opt-out were permanently enjoined from "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan." (Docs. 88 ¶12; 88-1 at 77.) Nevertheless, holders of claims or interests who affirmatively elected to opt out from the TPR could bring or continue to pursue claims against non-Debtor Defendants. *See* (Docs. 88 ¶12; 88-2 ¶5).

Wellpath also explains that:

A Liquidating Trust has assumed the Debtors' liability for all General Unsecured Claims, including personal injury and wrongful death claims that arose before the Petition Date. The Liquidating Trust is funded solely by assets transferred to it under the Plan, and recoveries on such claims are limited to a pro-rata distribution from the Trust. Enjoined Parties may not seek payment for this liability from the Debtors, the Post-Restructuring Debtors, or the property of either entity beyond this distribution. Holders of Claims against the Debtors are subject to the Trust Distribution Procedures ("TDPs"), including the non-binding alternative dispute resolution process set forth therein to determine, if necessary, the allowed amount for their Claim.

(Doc. 88 ¶14 (internal citations omitted)); *see also* (Doc. 88-2 ¶4).

Overall, the Bankruptcy Court discharged Wellpath/CCS from liability for any claims arising before the filing of its bankruptcy petition on November

- 14 -

11, 2024. *See* (Docs. 88-1 at 71–72; 88-2 ¶ 3). Here, Showers alleges that he received inadequate medical care based on events that occurred up until January 6, 2021. *See* (Doc. 33 ¶¶13–52; 39 ¶¶4–24). Because Showers's allegations and corresponding claims predate the date of CCS's bankruptcy petition, CCS contends that this Court should dismiss Showers's claims against CCS with prejudice pursuant to the bankruptcy discharge. (Doc. 89 at 5–6). The Court agrees.[1]

Under Chapter 11 of the Bankruptcy Code, "[a] discharge in a [Chapter 11 bankruptcy] case . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). Thus, Showers cannot proceed against CCS itself following the bankruptcy discharge.

---

[1] CCS notes that "holders of Claims or Interests that affirmatively elected to opt out of the Plan's Third-Party Release may bring or continue to pursue claims against the Non-Debtor Defendants, including employees of the Debtors or employees of the Post-Restructuring Debtors." (*Id.* at 4–5.) It also indicates that "Showers has affirmatively opted out of the Third-Party Release with respect to any Wellpath employee defendants in this case, i.e.[, Dr. Rodgers and O'Brien]. Therefore, his claims may proceed against . . . [Dr. Rodgers] and O'Brien." (*Id.* at 5 n.1.)

However, as the Honorable Robert D. Mariani recently explained when addressing a similar motion:

> In an Order dated January 25, 2026, the Bankruptcy Court clarified that, in accordance with the Trust Distribution Procedures ("TDPs") adopted when confirming Wellpath's Chapter 11 Plan and establishing the Liquidating Trust:
>
> > Holders of General Unsecured Claims arising from alleged pre-petition personal injury tort or wrongful death may proceed in the appropriate civil court and litigate such claim with the Trust included as a nominal defendant. As a nominal defendant, the Trust is not required to file answers, participate in discovery or hearings, or take an active role in any such litigation; provided, however, that nothing herein or in the Plan or TDPs shall prevent the Trust from participating in any such case at the direction of the Trustee or engaging in settlement discussions for purposes of determining stipulated Allowed Claim Amounts at the discretion of the Trustee.
>
> Revised and Amended Clarifying Order, *In re Wellpath SF Holdco*, No. 24-bk-90566 (Bankr. S.D. Tx. Jan. 25, 2026), Doc. 1279 at 2 (cleaned up).

*Payne v. Catell*, No. 25-cv-1119, 2026 WL 1510454, at *4 (M.D. Pa. May 29, 2026). Therefore, Showers may still seek to litigate his claim with the Liquidating Trust by moving to substitute it as a nominal defendant in accordance with the Bankruptcy Court's procedures. *See id.*; *see also Neyland v. Hutson*, No. 23-cv-01773, 2026 WL 1661364, at *2 (E.D. La. June

- 16 -

9, 2026) (discussing limited exception to discharge against Wellpath and related entities).[2]

## IV.    CONCLUSION

For the reasons stated above, the Court will grant CCS's motion to dismiss Showers's claims against it due to the bankruptcy discharge. However, this dismissal will be without prejudice to Showers's right to file a motion, within 30 days, to substitute the Liquidating Trust as a nominal party for CCS and pursue his claims through the Liquidating Trust as instructed by the Amended Plan. The Court will also deny as moot CCS's alternative motion for judgment on the pleadings and establish deadlines for the parties to conduct discovery and the parties to file dispositive motions. An appropriate Order follows.

MALACHY E. MANNION
United States District Judge

DATE: 7/14/26
20-1868-03

---

[2] The Court expresses no opinion on the viability of such a motion. As the Bankruptcy Court explained, a party with a pre-petition claim against a debtor may proceed "only where such inclusion is necessary for the party to seek or maintain insurance coverage for their claim." *In re Wellpath SF Holdco, LLC*, No. 24-bk-90566 (Bankr. S.D. Tex. Jan. 25, 2026), ECF No. 1279 at 2–3. Without such a showing, any attempt to "pursue pre-petition claims against [Wellpath and the other Debtors is] . . . contrary to the [Amended] Plan and barred by the injunction as set forth in the [Amended] Plan and/or the discharge injunction under [11 U.S.C. §524(a)(2)]." *Id.* at 4.